NO. 12-01-00164-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


§
 APPEAL FROM THE THIRD


EX PARTE

§
 JUDICIAL DISTRICT COURT OF

DAVE DONICA


§
 ANDERSON COUNTY, TEXAS

 

PER CURIAM


 Appellant Dave Donica ("Appellant") was indicted on thirty counts of sexual assault of a
child and thirty counts of indecency with a child. Bail was set at $250,000, and Appellant filed a
pretrial application for writ of habeas corpus in which he contended the bail was excessive. After
an evidentiary hearing, the trial court denied relief. In one point of error, Appellant asserts that the
trial court erred in denying the writ of habeas corpus and refusing to reduce the bail amount. We
affirm.


Background


 On June 30, 2000, Appellant was indicted on thirty counts of sexual assault of a child and
thirty counts of indecency with a child. The indictment alleges the offenses occurred during a six-month period from January 15, 1999 through June 25, 1999 and involved the same victim, Darlene
Burch (a pseudonym) ("Darlene"). Bail was set at $250,000. On May 8, 2001, Appellant filed an
Application for Writ of Habeas Corpus Seeking Bail Reduction, and the court held an evidentiary
hearing on May 18, 2001. 

 According to the testimony at the hearing, Appellant resided in Palestine during the time the
alleged offenses occurred and was the finance director for a local automobile dealership ("the
dealership"), where he had been employed for approximately nine years. Darlene did not testify, but
the attorneys informed the court that during the time of the alleged criminal conduct, Darlene was
living with Appellant, a family friend, with the consent of her grandmother. (1)

 Three of Appellant's former co-workers from the dealership testified in his behalf. 
Appellant's relationship with each was business rather than personal, and none of the three had any
specific knowledge of Appellant's personal life or habits. The first witness, Tommy Merritt
("Merritt"), was a former salesman who worked at the dealership with Appellant for approximately
two years, but had no further relationship with Appellant after July of 1999. Merritt testified that
Appellant is "extremely good at what he does" and that he assumed Appellant could find a job in the
East Texas area. He considers Appellant trustworthy and stated that if his own money were on the
line, he would feel comfortable with his belief that Appellant would appear in court as required. 
Merritt testified that he would have no reason to think Appellant was a danger to society. 

 Audrey Townsend ("Townsend") and Laurie Molder ("Molder"), who had also worked with
Appellant at the dealership, testified that Appellant would be able to find a job in East Texas. 
Townsend worked with Appellant for about a year and a half and believed he was trustworthy. She
testified that Appellant would not pose a danger to society and that her knowledge of Darlene was
a factor in her opinion, but she did not state what she knew. Townsend further testified she believed
Appellant would appear in court when ordered to do so. Molder testified that she had worked with
Appellant for four years and that she knew Darlene, but not well. She characterized Appellant as
"harmless" and agreed that Appellant was trustworthy, that he was not a danger to society, and that
he would appear in court as required. Both Townsend and Molder recalled Appellant had left his
employment at the dealership without telling anyone he was leaving, and neither had seen him since
he left.

 Appellant testified for the limited purpose of showing his inability to make bail. He stated
that he owns no real property and owes more on his 1993 Oldsmobile than it is worth. The only
resources available to him are $900 cash that a friend in Houston is holding for him and a stamp
collection worth about $200 to $300. Appellant also stated that he did not check with a bail
bondsman about whether he could make a $250,000 bond.

 Appellant testified that he worked at Gray's Plymouth Dodge in Houston before coming to
Palestine and had worked for a family named Giles prior to working in Houston. He also stated that
after he left Palestine, he went to visit his father in California and then to Jackson to look for work. (2) 
He later learned where David Giles was living, called him, and went to work for him in Louisiana.

 Appellant also testified that he has "a couple of close friends" in Palestine, but no family. 
He has a son who lives in the Fort Worth area and a daughter who "as far as he knows" lives in the
Beaumont area. He has not talked to his daughter since mid-1999, which was about the time he left
Palestine. In addition to his father, who lives in California, he also has a half sister and a stepsister.
One of the sisters lives in Oklahoma, and the other lives in California. Appellant's mother is
deceased.

 Brian Wharton ("Wharton"), a police department detective, and Joe Willis ("Willis"), an
investigator for the district attorney, testified for the State. Wharton testified that he had assisted
Detective Brimberry from June of 1999 when the investigation began until Appellant was arrested
approximately two weeks before the bail reduction hearing. He also testified that at some point in
the investigation, Appellant was to report to him or to Detective Brimberry and present a pill bottle
or pills similar to those he had given Darlene. Appellant did not do so, however, and the police did
not hear from him again.

 Wharton testified that the investigation began as a result of a disturbance call at the
apartments where Appellant lived. (3) When the police tried to locate Appellant, he was not at the
apartment or the dealership. (4) Appellant moved from his apartment after the investigation began, and
the investigating officers received information that he was living with friends on a farm in Anderson
County. Although they could not locate Appellant or the farm, they executed a search warrant at a
storage building in July of 1999 and found Appellant's personal property. A warrant was issued for
Appellant's arrest because the police were unsuccessful in their efforts to locate him either in
Anderson County or in the state.

 After Appellant was indicted, the investigators approached Willis for assistance in obtaining
a federal warrant for a felon, which would allow the FBI to search for Appellant in other states. 
Although Wharton does not know Appellant personally, he testified that he believes Appellant would
be a threat to society or the victim based on the behavior described in the indictment and his conduct
since the time of the offense.

 Willis testified that he assisted in trying to locate Appellant and checked Appellant's past
residences in Palestine, Nederland, Port Arthur, and Beaumont, Texas. During the investigation, he
received information that Appellant was possibly in New Mexico or California and requested
assistance from the FBI. After the FBI joined the search effort, Appellant was arrested in Lafayette,
Louisiana. Willis further testified that he has been actively investigating the case and that he has
evidence suggesting there are other possible victims. He has not been able to follow up completely
and does not know whether there will be other charges or indictments. He stated that no other
warrants exist at this time, but also testified that he would not tell Appellant about a warrant
beforehand based on his past behavior. The record is silent on whether Appellant has a prior
criminal record or any previous bonds. 

 At the conclusion of the hearing, the trial court denied the writ and added conditions to the
bond. Appellant gave timely notice of appeal.


Standard of Review


 The decision regarding a proper bail amount lies within the sound discretion of the trial
court. Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon Supp. 2001). Thus, we review a trial court's
refusal to reduce pretrial bail under an abuse of discretion standard. Ex parte Wood, 952 S.W.2d
41, 42 (Tex. App.--San Antonio 1997, no pet.).

 In deciding whether the trial court abused its discretion, we do not substitute our judgment

 for that of the trial court. Montgomery v. State, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990). 
The purpose of our review is to determine whether the trial court's decision was made without
reference to any guiding rules or principles of law, or in other words, whether the decision was
arbitrary and unreasonable. Id. at 380. An abuse of discretion occurs when a trial court's decision
is so clearly wrong as to lie outside that zone within which reasonable persons might disagree. Id.
at 391 (op. on reh'g).


Applicable Law


 Excessive bail is prohibited by the Eighth Amendment to the United States Constitution and
by Article I, Section 13 of the Texas Constitution. With few exceptions, all persons accused of a
crime in this state have a right to bail pending trial. Tex. Const. art. I, § 11; Tex. Code Crim.
Proc. Ann. art. 1.07 (Vernon 1977). The right to bail is based on the presumption of innocence.
Nguyen v. State, 881 S.W.2d 141, 143 (Tex. App.--Houston [1st Dist.] 1994, no pet.). 

 The primary purpose of an appearance bond is to secure the presence of the accused at trial
on the offense charged. Ex parte Rodriguez, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980). While
bail should be sufficiently high to give reasonable assurance that the accused will appear, the power
to require bail should not be used as an instrument of oppression. Ex parte Ivey, 594 S.W.2d 98,
99 (Tex. Crim. App. 1980). The burden is on the appellant to show the bond amount is excessive. 
Ex parte Charleston, 600 S.W.2d 316, 317 (Tex. Crim. App. [Panel Op.] 1980).

 The Texas Legislature has established the following factors to be considered by the trial court
in setting pretrial bail:


 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking
will be complied with.



 The power to require bail is not to be so used as to make it an instrument of oppression.

 The nature of the offense and the circumstances under which it was committed are to be
considered.

 The ability to make bail is to be regarded, and proof may be taken upon this point.

 The future safety of a victim of the alleged offense and the community shall be considered.




Tex. Code Crim. Proc. Ann. art. 17.15.

 Any consideration of the nature of the offense must necessarily include the punishment
authorized by law. Ex parte Ivey, 594 S.W.2d at 99. The nature of the offense and the possible
length of the sentence are the primary considerations in determining what constitutes reasonable bail. 
Ex parte Rubac, 611 S.W.2d 848, 849 (Tex. Crim. App. [Panel Op.] 1981). 

 The ability of an accused to post bond is merely one factor to be considered in determining
the appropriate bail, Ex parte Vance, 608 S.W.2d 681, 683 (Tex. Crim. App. [Panel Op.] 1980), 
but ability does not control the amount of bail, even if the accused is indigent. Charleston, 600
S.W.2d at 317. "Simply because a defendant cannot meet the bond set by the trial court does not
automatically render the bail excessive." Brown v. State, 11 S.W.3d 501, 504 (Tex. App.--Houston
[14th Dist.] 2000, no pet.)(per curiam).

 Other factors that may be considered include (1) work record; (2) family and community ties;
(3) length of residency; (4) prior criminal record, if any; (5) conformity with the conditions of any
previous bond; (6) the existence of outstanding bonds, if any; and (7) aggravating circumstances
alleged to have been involved in the offense the accused is charged with committing. Rubac, 611
S.W.2d at 849-50. Considerations such as family ties, residency, work history, prior criminal record,
and adherence to prior bonds are designed to gauge flight risk potential. In re Hulin, 31 S.W.3d
754, 761 (Tex. App.--Houston [1st Dist.] 2000, no pet.).


 Analysis
 

 In the sole issue presented for our consideration, Appellant contends that the trial court's
refusal to reduce his bond violates his right to reasonable bail. The factors to be considered in our
review of the trial court's decision are those that are to be considered by the trial court in its initial
determination of bail. Smith v. State, 829 S.W.2d 885, 887 (Tex. App.--Houston [1st Dist.] 1992,
pet. ref'd).

Reasonable assurance of appearance 

 The date on which Appellant became aware of the investigation is not clear from the record. 
However, the evidence shows that after nine years of employment, Appellant left the dealership
about the time the investigation began and did not tell anyone there that he was leaving. (5) Appellant
testified that he went to California after he left Palestine, looked for a job in Jackson, and later
moved to Louisiana. The testimony of Wharton and Willis establishes that the police were unable
to locate Appellant in Anderson County or in the state. He was arrested in Louisiana only after the
FBI assisted in the search. His arrest was almost two years after the investigation began. 

 Appellant's former co-workers testified they believed that Appellant could find a job in the
East Texas area and that he would appear in court as required. Appellant's testimony revealed that
he has no ties with either Palestine or the East Texas area, although he testified he would seek
employment in the Tyler-Longview area if released on bail. Appellant has two children, both of
whom live in Texas. His son lives in Fort Worth, and his daughter lived in the Beaumont area when
Appellant last spoke with her, which was before he left Palestine. Appellant has other family
members who live in either Oklahoma or California, but none who live in Texas. 

 The trial court did not state the reasons for its decision. However, the evidence presented at
the hearing supports a finding that Appellant is a flight risk. The dates of Appellant's abrupt
departure from the state and the beginning of the investigation were approximately the same, which
supports an inference that Appellant left as a result of the investigation. In addition, Appellant also
agreed at some point in the investigation to report to either Wharton or Detective Brimberry, but
failed to do so. Although Appellant's former co-workers testified that Appellant would appear in
court as required, their relationship with Appellant was business rather than personal, and they had
not seen him since he left the dealership almost two years earlier. The trial court could have
reasonably given more weight to Appellant's prior behavior and his lack of ties to the community
and the state in determining the bail amount. (6)

Use of bail as an instrument of oppression

 As a general rule, bail is oppressively high if the amount is more than necessary to provide
reasonable assurance that the accused will appear in court. Ex parte McDonald, 852 S.W.2d 730,
732 (Tex. App.--San Antonio 1993, no pet.). However, bail is not oppressive merely because it is
high, and the bail set by the trial court will be upheld if unusual circumstances justify the amount. 
Ex parte Bogia, No. 01-01-00266-CR, 2001 WL 995425, at *5 (Tex. App.--Houston [1st Dist.]
Aug. 30, 2001, no pet. h.). 

 Several courts have determined that risk of flight will justify a high bail amount. See, e.g.,
Wright v. State, 976 S.W.2d 815, 820-21 (Tex. App.--Houston [1st Dist.] 1998, no pet.)($500,000
not excessive where defendant indicted for aggravated assault attempted to obtain fake identification,
committed aggravated assault as part of plan to escape punishment for murder, and would soon
receive inheritance sufficient to finance flight); Ex parte Brown, 959 S.W.2d 369, 373 (Tex.
App.--Fort Worth 1998, no pet.)($500,000 not excessive where defendant indicted for capital
murder had moved around all his life, had no close ties to the community, and would jeopardize his
family's assets and not his own if he failed to appear for trial); O'Neill v. State, 635 S.W.2d 166, 167
(Tex. App.--Houston [1st Dist.] 1982, no pet.)($100,000 not excessive where defendant charged
with aggravated sexual abuse of a child had no ties to the community).

 In our review of the record, we find no statement by the trial court that indicates the purpose
of setting a high bail amount was to assure Appellant's continued confinement. (7) Further, the cases
cited above support the conclusion that risk of flight is an unusual circumstance and justifies a high
bail. Therefore, we conclude that bail in this case was not used as an instrument of oppression.

Nature of the Offense and Circumstances of Commission 

 At the hearing, the trial court took judicial notice of the indictment, which describes repeated
instances of the alleged conduct during a six-month period. Although the State admits in its brief
that no statutory aggravating factors are present, the record shows only that the alleged victim lived
with Appellant and includes no other evidence relating to the circumstances under which the alleged
offenses were committed. 

 Sexual assault of a child and indecency with a child are considered serious offenses in our
society. Esquivel v. State, 922 S.W.2d at 603. As a result, sexual assault of a child is a second
degree felony, Tex. Pen. Code Ann. § 22.011(f) (Vernon Supp. 2001), and indecency with a child
is a third degree felony, Tex. Pen. Code Ann. § 21.11(c) (Vernon Supp. 2001). In Texas a second
degree felony is punishable by two to twenty years in prison and a maximum fine of $10,000. Tex.
Pen. Code Ann. § 12.33 (Vernon 1994). A third degree felony is punishable by two to ten years in
prison and a maximum fine of $10,000. Tex. Pen. Code Ann. § 12.34 (Vernon 1994). Appellant
is charged with thirty counts of an offense in each classification. 

 The classification of the offenses charged, the possible range of punishment, and the number
of counts included in the indictment indicate the seriousness of the charges against Appellant. When
sexual offenses are committed against individuals under the age of seventeen years, however, an
additional factor relating to possible punishment must be considered. 

 If a defendant is convicted of more than one offense arising out of the same criminal episode,
the general rule is that the sentences run concurrently if the offenses are prosecuted in a single
criminal action. Tex. Pen. Code Ann. 3.03(a)(Vernon Supp. 2001). If, however, crimes such as
those alleged in this case are committed against a person younger than seventeen years of age, the
sentences may run consecutively. Tex. Pen. Code Ann. § 3.03(b)(2) (Vernon Supp. 2001).
Therefore, if Appellant is convicted on multiple counts in the indictment, his sentences may run
consecutively pursuant to section 3.03(b)(2) because the alleged conduct arises out of the same
criminal episode. In that instance, the possible period of incarceration increases substantially. (8) 

Ability to make bail

 The uncontroverted evidence in this case shows that Appellant cannot post more than a
nominal bond. According to his testimony at trial, Appellant has a maximum of $1,200 in assets
available to him for the purpose of making bail. No evidence was introduced to show what bond
Appellant could furnish or that he had tried to obtain a bond in the amount set by the court. Ordinarily an unsuccessful effort to furnish bail in the amount fixed is necessary to preserve
a complaint about the amount set by the trial court. Ex parte Williams, 467 S.W.2d 433, 434 (Tex.
Crim. App. 1971). Because the bail amount in this case is substantial, we conclude that applying the
rule set forth in Williams would require Appellant to do a "useless thing" and is therefore
unnecessary. See Ex parte Dueitt, 529 S.W.2d 531, 532 (Tex. Crim. App. 1975)(requiring showing
of effort to make bond "useless thing" when evidence showed funds of petitioner and his family were
exhausted); Ex parte Bogia, 2001 WL 995425, at *5 (showing of effort to make bond unnecessary
where amount of bond was $360,000 and court doubted more than one person in ten could post
without help from others). Thus, Appellant's showing of limited resources was sufficient to preserve
his complaint on appeal.

Future safety of alleged victim and community 

 Appellant's former co-workers testified he was not a danger to the community. Wharton,
on the other hand, concluded that Appellant was a threat to society or the alleged victim, citing the
conduct alleged in the indictment and Appellant's behavior since the investigation. Willis testified
that he has evidence suggesting there are other victims, but has been unable to follow up completely
on those leads. He did not state any opinion about the future safety of the victim or the community,
and Darlene did not testify.

 If an accused poses a threat to the alleged victim or the community, the trial court may give
considerable weight to that factor in setting the amount of bail. See Hulin, 31 S.W.3d at 761. 
However, the existence of an indictment, without more, is insufficient to show the accused poses
such a threat, and evidence should be presented on that issue. See Ex parte Milburn, 8 S.W.3d 422,
426 (Tex. App.--Amarillo 1999, no pet.)(capital murder defendant not considered a threat to the
community where no evidence was presented); Ex parte Wood, 952 S.W.2d at 43 (defendant
indicted for capital murder and aggravated robbery not considered a threat where no evidence
presented); Nguyen v. State, 881 S.W.2d at 144 (defendant charged with aggravated robbery,
burglary of a habitation, and engaging in criminal activity not considered a threat to the victims
where no evidence presented).

 The unproven allegations in the indictment, Appellant's departure from the state, and the
reference to leads that have not been completely investigated are insufficient support for a conclusion
that Appellant is a threat to the alleged victim or to the community. In reviewing the record in this
case, we find no other evidence sufficient to create an inference that Appellant is a threat to either
the victim or the community. 



Conclusion


 After considering the factors set forth in article 17.15 and the record in this case, we hold that
the trial court did not abuse its discretion in setting bail at $250,000. The seriousness of the crimes
charged, the possible punishment, and Appellant's flight potential support the trial court's decision
that a substantial bail amount is justified. Appellant's inability to make bail and the lack of evidence
that he poses a threat to the alleged victim or the community are insufficient to justify a reduction
in Appellant's bail when considered in light of the facts that support the trial court's decision.

 Although the bail amount in this case is high, Appellant has not shown that it is excessive. 
We therefore overrule his sole issue and affirm the judgment of the trial court.


Opinion delivered October 24, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.


























(DO NOT PUBLISH)
1. Darlene, whose mother was deceased, had been adopted by her grandmother. Darlene's age is not stated in
the record.
2. Appellant did not identify the state in which Jackson is located or testify whether he had ties to that area.
3. The record does not include the details of the disturbance. Therefore, it is unclear whether Appellant was
involved in the disturbance or whether he was present when the police arrived.
4. Wharton did not explain why the police initially attempted to locate Appellant or how much time elapsed
between the disturbance call and the attempt to locate him.
5. According to Wharton, the investigation began in June of 1999, and Appellant testified that he left Palestine
in mid-1999.
6. The trial court, as the trier of fact, has the job of judging the credibility of the witnesses and the weight to be
given their testimony. Esquivel v. State, 922 S.W.2d 601, 604 (Tex. App.--San Antonio 1996, no pet.).
7. In Ex parte Harris, 733 S.W.2d 712, 714 (Tex. App.--Austin 1987, no pet.), the trial judge stated on the
record that a high bail amount was set "to keep [the appellant] from going out and committing another offense." 
8. In addition, any pecuniary fines imposed for multiple counts will be cumulative. Mountain v. State, 789
S.W.2d 663, 665 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd).